IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INTERNATIONAL ASSOCIATION OF MACHINISTS
DISTRICT 10 AND LOCAL LODGE 873,

                Plaintiffs,                      OPINION AND ORDER

    v.

                                              16-cv-77-wmc

STATE OF WISCONSIN, SCOTT WALKER,
DEPARTMENT OF WORKFORCE DEVELOPMENT,
AND RAY ALLEN,[1]

                Defendants.

---

Plaintiffs International Association of Machinists District 10 ("District 10") and its Local Lodge 873 filed this lawsuit under 42 U.S.C. § 1983 and § 302(e) of the Labor Relations Act, 29 U.S.C. § 186(c)(4), challenging a single provision of Wisconsin's recently enacted "Right to Work" law, 2015 Wisconsin Act 1. Specifically, plaintiffs contend that the provision of the law making "dues check-off authorizations" revocable upon 30 days' notice by an employee, Wis. Stat. § 111.06(1)(i), is preempted by § 302(c)(4) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c).[2]

Plaintiffs have moved for a preliminary injunction to enjoin defendants from applying Wis. Stat. § 111.06(1)(i) to any dues check-off authorization governed by the

---

[1] Ray Allen, current secretary of the Department of Workforce Development, has been substituted for the former secretary pursuant to Fed. R. Civ. P. 25.

[2] There is an ongoing state court also challenging 2015 WI ACT 1, though on different grounds than plaintiffs raise in this case. In *Int'l Assoc. of Machinists Dist. 10 and its Local Lodge 1061, et al.* (Dane County Cir. Ct. Case No. 15CV628), the plaintiffs challenged the entirety of Act 1 as a violation of the takings clause of the Wisconsin Constitution. The circuit court granted a motion for summary judgment in favor of the plaintiffs on April 15, 2016, and enjoined the state, the attorney general and the Wisconsin Employment Relations Commission from enforcing the statute. The Wisconsin Court of Appeals lifted the stay, pending resolution of the state's appeal, on May 24, 2016. *Int'l Assoc. of Machinists Dist. 10, et al.* (2016AP820). That appeal is still pending.

LMRA.   (Dkt. #2.)   For their part, defendants filed a motion for judgment on the pleadings, arguing that the entire suit should be dismissed because (1) plaintiffs lack standing to challenge the statute and (2) plaintiffs have failed to name a proper defendant.  (Dkt. #25.)

Defendants' motion will be granted with respect to its arguments that the State of Wisconsin, Governor Walker and the Department of Workforce Development ("DWD") should be dismissed as defendants.  The motion will be denied in all other respects, however, because the court concludes that plaintiffs have standing to sue and that the Secretary of the DWD is an appropriate defendant.

While their lawsuit may continue, plaintiffs' motion for a preliminary injunction will also be denied.  Although plaintiffs have shown some likelihood of success on the merits, they have failed to make any showing that they will suffer irreparable harm absent an injunction.  Ultimately, in order for plaintiffs to obtain the broad scope of injunctive relief requested, they must also amend their complaint to add a claim against the chairman of the Wisconsin Employment Relations Commission ("WERC"). Accordingly, this case shall proceed with plaintiffs filing an amended complaint and then with dispositive motions under the current schedule.

## FACTS[3]

International Association of Machinists District 10 ("District 10") is a labor organization located in Milwaukee, Wisconsin, and is composed of approximately 30 lodges, including Local Lodge 873.  Both District 10 and its lodges represent employees

---

[3] The following facts are drawn from plaintiffs' proposed statement of facts and defendants' responses.

for purposes of collective bargaining and are parties to numerous collective bargaining agreements with various employers. Local 873 represents employees at the John Deere plant in Horicon, Wisconsin, and is party to a collective bargaining agreement with John Deere. That collective bargaining agreement is effective October 1, 2015, through October 1, 2022. Among the employees the union represents under the collective bargaining agreement is Lisa Aplin, who works as an assembler at John Deere.

On or about November 18, 2002, Aplin signed a dues check-off authorization authorizing the deduction of union dues from her wages, which the parties agree continued in effect under the latest collective bargaining agreement. The authorization stated that:

> This authorization shall be irrevocable for one (1) year or until the termination of the collective bargaining agreement between my Employer and the Union, whichever occurs sooner. I agree that this authorization shall be automatically renewed for successive 1-year periods or until the termination of the collective bargaining agreement, whichever is the lesser, unless I revoke it by giving written notice to me Employer and Union not more than twenty (20) and not less than five (5) days prior to the expiration of the appropriate yearly period or contract term.

(Dkt. #1-8.)

On July 31, 2015, however, Aplin sent a letter to John Deere stating that she no longer wished to pay union dues. Invoking 2015 Wisconsin Act 1, Aplin's letter explained that she was now allowed to terminate her dues check-off authorization at any time, rather than having to wait until the end of the year of the authorization's life, so long as she provided at least 30 days' written notice of termination. On or about September 11, 2015, District 10 advised Aplin that her request would not be granted because it was not presented during the narrow 15 day window leading up to expiration of the appropriate yearly period or contract term.

3

After receiving the union's letter, Aplin filed a complaint with the Labor Standards division of the DWD, alleging that "union dues were taken out after opting out of the union."  John Deere responded to Aplin's complaint by producing copies of her authorizations for check-off of dues and the collective bargaining agreement, advising that Aplin could only revoke the automatic check-off once a year during a narrow window leading up to the anniversary date of her signing the checkoff agreement or upon termination of the collective bargaining agreement, whichever occurs sooner.

On November 12, 2015, an investigator from the Labor Standards Division of the DWD issued a decision finding that the dues taken from Aplin's paycheck after she submitted her withdrawal were "unauthorized and illegal."

> Under Wisconsin Statute 111.06(1)(i) such a deduction is illegal unless you have the employee's signed authorization to make the deduction and the authorization is terminable by the employee giving the employer at least 30 days' written notice of the termination.  The changes to Wisconsin Statute 111.06(1)(i) required the 30 day termination notice period were enacted as of March 10, 2015 and were certainly in effect as of July 1, 2015 when the Labor Agreement between the employer and union was modified and extended.
>
> The Complainant provided the employer with written notice that she no longer wished to pay union dues or any fees on July 31, 2015.  In accordance with Wisconsin Statute 111.06(1)(i) any union dues or fees deductions taken after the 30 day notice period, August 30, 2015, are considered unauthorized and illegal deductions from wages earned.  Under Wisconsin Statute 109 the wages Ms. Aplin earned are due and payable.

(Dkt. #1-12.)  The letter also informed John Deere that it could seek administrative review within the DWD within 15 days of the date of this letter.

John Deere apparently did not seek review of the investigator's decision, but instead reimbursed Aplin for the union dues deducted from her check.  District 10 and Local 873 then filed this lawsuit.

4

OPINION

I.      **Defendants' Motion for Judgment on the Pleadings**

Defendants move for judgment on the pleadings on two grounds:   (1) plaintiffs lack standing; and (2) plaintiffs have not named a proper defendant.


    A.      **Standing**

As this court cannot exercise jurisdiction if plaintiffs lack standing to challenge Wis. Stat. § 111.06(1)(i) on grounds of federal preemption, the court turns to this argument first.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Schirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) ("Unless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional.")  To obtain standing under Article III of the Constitution, plaintiffs must show that they have suffered an injury in fact that is fairly traceable to the challenged action of the defendants and capable of being redressed by a favorable decision from the court.  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013); *Friends of the Earth, Inc. v. Laidlaw Environmental Service*, 528 U.S. 167, 180-81 (2000).

Here, defendants argue that plaintiffs lack standing because they cannot show that they have been "injured" by Wis. Stat. § 111.06(1)(i) generally or by any action of defendants in particular.  Plaintiffs have, however, alleged an injury in fact resulting directly from DWD's conclusion that Wis. Stat. § 111.06(1)(i) precluded John Deere from continuing to withhold union dues from the paychecks of employees who provide 30 days notice of revocation, like Lisa Aplin.  Although plaintiffs were not involved in the agency proceedings, they nevertheless suffered an injury as a result of the agency's decision in the form of reduced dues for the remainder of the collective bargaining

5

agreement.   While plaintiffs' monetary injury from the agency decision with respect to Aplin alone appears to be minor, assuming she would have filed a timely notice of revocation under the terms of the collective bargaining agreement in November 2015 (the same month in which the agency decision came down), plaintiffs also suffered a broader injury in having a provision of their collective bargaining agreement with John Deere and its unionized employees essentially rendered void.[4]  Regardless, plaintiffs' real goal is to bring a facial challenge to the legality of Wis. Stat. § 111.06(1)(i), and ultimately obtain an injunction prohibiting *any and all* enforcement of § 111.06(1)(i).

Still, plaintiffs' standing to assert a claim for damages or injunctive relief arising out of a single agency decision interpreting the statute does not necessarily carry over to a facial challenge requesting prospective injunctive relief against any and all enforcement of Wis. Stat. § 111.06(1)(i).  *See Friends of the Earth*, 528 U.S. at 185 (well-established that a plaintiff "must demonstrate standing separately for each form of relief sought"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff had standing to seek damages but not injunctive relief against abusive police practices).  This is especially so given that the DWD is not the even agency charged with enforcing § 111.06(1)(i), at least directly.  That authority resides in the Wisconsin Employment Relations Commission ("WERC"), as well as private parties who may seek relief in Wisconsin courts.  *See* § 111.07(1) (§ 111.06(1) is enforced via complaint filed with WERC or courts).  Thus, an action seeking to enjoin *all* enforcement of § 111.06(1)(i) would appear to require that the

---

[4] To the extent that plaintiffs are seeking compensatory damages for lost dues, it is unclear whether preclusionary principles or the *Rooker-Feldman* doctrine would bar such relief.  Moreover, plaintiffs have not named any defendants from whom they could obtain monetary damages.  Still, this does not change the possible impact on plaintiffs if the DWD's ruling is followed generally going forward.

acting chairman of WERC be named as a defendant in addition to DWD, which appears to have indirect authority to enforce § 111.06(1)(i).[5]

Assuming the court would grant plaintiffs leave to amend their complaint to add a claim against the chairman of WERC, the question remains whether plaintiffs have alleged an injury sufficient to bring a facial challenge to the statute and to obtain prospective injunctive relief against any and all enforcement of § 111.06(1)(i).   While this appears to be a close question, neither side addresses it directly in their briefs, which unfortunately are like ships passing in the night.   Defendants focus on their ultimately unpersuasive argument that the DWD decision did not cause any injury to plaintiffs, while plaintiffs primarily analyze the existence of *statutory* standing under § 1983 and the LMRA, which defendants did not directly challenge.   The most relevant question to plaintiffs' request for prospective injunctive relief, however, is whether there is any threat or possibility that WERC, DWD or some other agency will enforce § 111.06(1)(i) in a way that will harm plaintiffs *in the future*.

Plaintiffs have not alleged that there are any current proceedings in WERC or the DWD that is likely to impair their rights by an unlawful application of § 111.06(1)(i). Of course, "preenforcement challenges . . . are within Article III," and "[i]njury need not be certain" in a preenforcement action. *Brandt v. Village of Winnetka, Ill.*, 612 F.3d 647, 649 (7th Cir. 2010).   A plaintiff may satisfy the injury-in-fact requirement in a preenforcement action by showing an intent to engage in conduct prohibited by the challenged statute and a "credible threat" of enforcement of the statute.   *See Am. Civil*

---

[5] Plaintiffs have named Governor Walker and the State of Wisconsin as defendants, presumably for purposes of obtaining a broad injunction against enforcement of Wis. Stat. § 111.06(1)(i). As discussed below, however, neither Governor Walker nor the state is an appropriate defendant in this action.

*Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 590-91 (7th Cir. 2012).  Certainly, even though not expressly alleged, here, plaintiffs rights might (if not, likely, will) be impaired by additional wage disputes in which DWD will apply § 111.06(1)(i) to invalidate a check-off authorization, or by a challenge to the annual renewal of the check-off provision raised in WERC or a court proceeding.  Moreover, "[p]reenforcement suits always involve a degree of uncertainty about future events."  *Id.* at 593-94.  *See also Brandt*, 612 F.3d at 649 ("Any pre-enforcement suit entails some element of chance....").  "So long as that uncertainty does not undermine the credible threat of prosecution or the ability of the court to evaluate the merits of the plaintiff's claim in a preenforcement posture, there is no reason to doubt standing."  *Alvarez*, 679 F.3d at 593-94.  *See also Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473-74 (7th Cir. 2012) (A plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief"; but rather, plaintiff must show only that she faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.")(citations omitted).

Here, § 111.06(1)(i), on its face, flatly prohibits existing check-off authorizations contained in plaintiffs' collective bargaining agreements.  Plaintiffs would like to continue using those check-off authorizations, but doing so invites wage disputes such as that raised by Lisa Aplin.  Perhaps more significantly, the check-off authorizations risk exposing plaintiffs and conceivably employees to WERC challenges, which could result in adverse orders by WERC impairing plaintiffs' ability to bargain with employers.  *See* Wis. Stat. § 111.07(4) ("Final orders [by WERC] may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, suspend the person's rights, immunities, privileges or remedies granted

8

or afforded by this subchapter for not more than one year, and require the person to take such affirmative action, including reinstatement of employees with or without pay, as the commission deems proper. . . .").

At this stage, these potential injuries are sufficient to establish plaintiffs' standing to seek both damages and prospective injunctive relief. *See Brandt*, 612 F.3d at 649-50 (holding that injury-in-fact was established where the "probability [of injury] is materially greater than zero"). Even so, to proceed further with a claim for prospective injunctive relief against any and all enforcement of the statute, plaintiffs must file an amended complaint naming the chairman of WERC as a defendant.

**B.      Improperly Named Defendants**

Although plaintiffs have standing to sue, they have named several improper parties as defendants. Plaintiffs bring their claims under 42 U.S.C. § 1983 and the LMRA directly, and have named Governor Scott Walker, the State of Wisconsin, DWD and the Secretary of DWD as defendants. Plaintiffs wholly fail to respond to defendants' argument that the Governor should be dismissed, so the court will grant defendants' motion to dismiss him without further discussion.

With respect to the other defendants, neither the State of Wisconsin nor the DWD are "persons" that may be sued under § 1983, so they must be dismissed as to those claims. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989); *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012). The court agrees with defendants that the state and DWD must also be dismissed as to the LMRA claims, under Eleventh Amendment immunity.

Although plaintiffs cite several cases regarding federal preemption of state law in

9

the area of labor relations, they cite no legal authority supporting their argument that Congress intended to abrogate the states' Eleventh Amendment immunity for claims brought under the LMRA. Similarly, the Seventh Circuit has recognized that no state has waived its sovereign immunity with respect to claims under § 301 of the LMRA. *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 845 (7th Cir. 2015). Although plaintiffs assert a claim under § 302 in this case, plaintiffs offer no support for the proposition that Congress abrogated, nor that any state waived, its immunity with respect to § 302 and not § 301. Accordingly, the State of Wisconsin and DWD will be dismissed from the case.[6]

This leaves the Secretary of DWD, whom plaintiffs argue is properly named in his official capacity under the exception to sovereign immunity established in *Ex parte Young*, 209 U.S. 123, 157 (1908). The court agrees. Under *Ex parte Young*, a state official can be sued in an official capacity to correct an ongoing violation of federal law if the official has "some connection" with the challenged violation. *See Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 644-45 (7th Cir. 2006). Here, although DWD does not have express statutory authority to enforce § 111.06(1)(i), its decision in the Aplin proceedings amounts to indirect enforcement of the statute in resolving wage disputes. Since Secretary Allen appears to have the authority to direct DWD investigators as to how a statute must be interpreted and applied, he would also have the authority to enforce an injunction issued by this court prohibiting DWD from applying § 111.06(1)(i) in a way that violates federal law.

As discussed above, however, the Secretary of the DWD does not have the

---

[6] Because DWD will be dismissed from the case, the court need not address defendants' argument that plaintiffs failed to properly serve DWD.

authority to prohibit all enforcement of § 111.06(1)(i).  Plaintiffs must, therefore, also name the chairman of WERC as an additional defendant in order to obtain the full extent of the relief they seek.

## II.    Plaintiffs' Motion for a Preliminary Injunction

Having resolved defendants' threshold challenges, the court turns to plaintiffs' request for a preliminary injunction.  A preliminary injunction is an extraordinary remedy and is never awarded as of right.  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *D.U. v. Rhoades, No.* 15-1243, -- F.3d --, 2016 WL 3126263, at *2 (7th Cir. June 3, 2016) (citing *Winter,* 555 U.S. at 20).

Plaintiffs have met the low bar for demonstrating a likelihood of success on the merits.  *See Michigan v. United States Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011) ("The threshold for demonstrating a likelihood of success is low."); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) ("[T]he plaintiff's chances of prevailing need only be better than negligible.")  Although the Seventh Circuit has rejected broad constitutional and preemption challenges to "right to work" laws, *see, e.g., Sweeney v. Pence*, 767 F.3d 654, 657 (7th Cir. 2014), it does not appear to have considered a specific challenge to a check-off authorization provision under the LMRA.  Indeed, the parties and the court were able to find only two cases in which courts have addressed the narrow issue presented here.  In both cases, courts struck down state laws making dues check-off

authorizations revocable at the will of the employee. *See SeaPak v. Indus., Tech. & Prof'l Emp., Div. of Nat'l Mar. Union, AFL-CIO*, 300 F. Supp. 1197, 1200 (S.D. Ga. 1969), *aff'd sub nom.* 423 F.2d 1229 (5th Cir. 1970), *aff'd sub nom.* 400 U.S. 985 (1971); *United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1218 (D. Ariz. 2013). Although defendants argue that these cases were decided wrongly, the court need not resolve that dispute at this stage, since plaintiffs have shown a "better than negligible" chance of success on the merits by pointing to two supporting cases, one of which was summarily affirmed by the Supreme Court.

Even though plaintiffs have shown some likelihood of success on the merits, however, they have not demonstrated that irreparable injury is likely in absence of an injunction. Plaintiffs are concerned that if Wis. Stat. § 111.06(1)(i) is enforced and invalidates their dues check-off authorizations, they will lose a significant amount of dues which will, in turn, hamper their ability to represent their members adequately in collective bargaining, as well as engage in other protected union activities. The problem for plaintiffs is they offer *no* evidence to back up these concerns. For example, plaintiffs do not even estimate how much revenue they anticipate losing or how else their operations would be affected specifically by affidavit or declaration. This omission is particularly significant where, under the plaintiffs' own allegations, employees -- such as Aplin -- may opt out of dues deductions during a specified period every year regardless of § 111.06(1)(i), something that may have already occurred now that the Wisconsin Court of Appeals has lifted the injunction on enforcement of that statute.

Thus, at most on the present record, the passage of § 111.06(1)(i) *might* deprive plaintiffs of *a few months* additional union dues for *a few employees*. In particular, plaintiffs

make no attempt to explain how deprivation of a few months of union dues would cause irreparable harm to union operations.[7]   Plaintiffs' reliance on vague and conclusory statements about irreparable harm are simply not enough to show that they are entitled to the extraordinary remedy of preliminary injunctive relief.   Accordingly, their request for a preliminary injunction will be denied and this case shall proceed to summary judgment.   *See D.U.,* -- F.3d --, 2016 WL 3126263, at *6 (denying motion for preliminary injunction where plaintiff showed likelihood of success on merits but failed to show irreparable harm).

## ORDER

IT IS ORDERED that:

1. Defendants' motion for judgment on the pleadings (dkt. #25) is GRANTED IN PART as to State of Wisconsin, Governor Scott Walker and the Department of Workforce Development,  all of whom are DISMISSED as defendants.  The motion is DENIED in all other respects.

2. Plaintiffs' motion for a preliminary injunction (dkt. #2) is DENIED.

3. Plaintiffs may have until July 22, 2016, to file an amended complaint that names the Chairman of the Wisconsin Employment Relations Commission as an additional defendant in this case.

Entered this 12th day of July, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[7] This is not to say plaintiffs could not make a showing of irreparable harm, but simply that they have not.