IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INTERNATIONAL ASSOCIATION OF MACHINISTS
DISTRICT 10 AND LOCAL LODGE 873,

              Plaintiffs,

v.

RAY ALLEN AND JAMES R. SCOTT,

              Defendants.

AMENDED
OPINION AND ORDER

16-cv-77-wmc

---

Plaintiffs International Association of Machinists District 10 ("District 10") and its Local Lodge 873 filed this lawsuit under 42 U.S.C. § 1983, challenging a single provision of Wisconsin's "Right to Work" law, Section 9 of 2015 Wisconsin Act 1, that prohibits "dues checkoff authorizations" unless revocable upon 30 days' notice by an employee.  Wis. Stat. § 111.06(1)(i).  Plaintiffs maintain that this prohibition is preempted by § 302(c)(4) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(4), which permits dues checkoff authorizations that are irrevocable for up to one year.  Plaintiffs seek declaratory and injunctive relief against Ray Allen, Secretary of the Wisconsin Department of Workforce Development ("DWD"), and James Scott, Chairman of the Wisconsin Employment Relations Commission.

Before the court are the parties' cross motions for summary judgment.  All of the material facts are undisputed and the parties agree that this case turns on whether Wisconsin's restriction on dues checkoff agreements is preempted by federal law.  The outcome of this case is controlled by *SeaPak v. Indus., Tech. & Prof'l Emp., Div. of Nat'l Mar. Union, AFL-CIO*, 300 F. Supp. 1197, 1200 (S.D. Ga. 1969), *aff'd sub nom.* 423 F.2d 1229 (5th Cir. 1970), *aff'd sub nom.* 400 U.S. 985 (1971), which held that a very similar Georgia law making checkoff authorizations revocable at will was not compatible with

the LMRA's allowance for irrevocable authorizations not to exceed one year. Accordingly, the court will grant plaintiffs' motion for summary judgment, enter an order declaring Wis. Stat. § 111.06(1)(i) to be unconstitutional, and permanently enjoin defendants from enforcing it absent a change in federal law.

## UNDISPUTED FACTS[1]

International Association of Machinists District 10 ("District 10") is a labor organization located in Milwaukee, Wisconsin, and is composed of approximately 30 "Lodges," including Local 873, which represents employees at the John Deere plant in Horicon, Wisconsin. In that capacity, Local 873 is party to a collective bargaining agreement with John Deere, which became effective October 1, 2015, and continues through October 1, 2022.

Among the employees the union represented in negotiating the collective bargaining agreement is Lisa Aplin, who works as an assembler at John Deere. In November 2002, Aplin signed a "dues checkoff authorization" for the deduction of union dues from her wages, which the parties agree continued in effect under the 2015 collective bargaining agreement. In relevant part, the authorization states that it:

> shall be irrevocable for one (1) year or until the termination of the collective bargaining agreement between my Employer and the Union, whichever occurs sooner. I agree that this authorization shall be automatically renewed for successive 1-year periods or until the termination of the collective bargaining agreement, whichever is the lesser, unless I revoke it by giving written notice to me Employer and Union not more than twenty (20) and not less than five (5) days prior to the expiration of the appropriate yearly period or contract term.

(Dkt. #1-8.)

---

[1] The following undisputed facts are drawn from the parties' proposed statements of fact and responses.

On July 31, 2015, however, Aplin sent a letter to John Deere stating that she no longer wished to pay union dues. Invoking 2015 Wisconsin Act 1, Aplin's letter explained that she was now allowed to terminate her dues checkoff authorization on 30 days' written notice, rather than having to wait until the end of the year of the authorization's life. On or about September 11, 2015, however, District 10 advised Aplin that her request would not be granted because it was not presented during the narrow, 15-day window leading up to the annual contract renewal.

After receiving the union's letter, Aplin filed a complaint with the Labor Standards division of the DWD, alleging that "union dues were taken out after opting out of the union." On November 12, 2015, an investigator from DWD's Labor Standards Division issued a decision finding that the dues taken from Aplin's paycheck after she submitted her withdrawal were "unauthorized and illegal."

> Under Wisconsin Statute 111.06(1)(i) such a deduction is illegal unless you have the employee's signed authorization to make the deduction and the authorization is terminable by the employee giving the employer at least 30 days' written notice of the termination. The changes to Wisconsin Statute 111.06(1)(i) required the 30 day termination notice period were enacted as of March 10, 2015 and were certainly in effect as of July 1, 2015 when the Labor Agreement between the employer and union was modified and extended.
>
> The Complainant provided the employer with written notice that she no longer wished to pay union dues or any fees on July 31, 2015. In accordance with Wisconsin Statute 111.06(1)(i) any union dues or fees deductions taken after the 30 day notice period, August 30, 2015, are considered unauthorized and illegal deductions from wages earned. Under Wisconsin Statute 109 the wages Ms. Aplin earned are due and payable.

(Dkt. #1-12.) John Deere subsequently reimbursed Aplin for the union dues deducted from her check. District 10 and Local 873 then filed this lawsuit.

After this suit was filed, the DWD received a second labor standards complaint from a member of the United Food and Commercial Workers union, stating that the

3

member wished to revoke his dues checkoff authorization upon 30 days' notice. Like Aplin, the member had signed a checkoff authorization that continued on a year to year basis. In response to the complaint, counsel for the member's employer argued that Wis. Stat. § 111.06(1)(i) was preempted by federal law. In a written decision on July 28, 2016, the DWD stated that the issue of preemption "has not yet been litigated in Wisconsin courts," and that because "[t]he Department cannot determine that the law is preempted, [it] must enforce the statute in its current form." Therefore, the DWD again concluded that Wis. Stat. § 111.06(1)(i) prohibited any dues checkoff authorization that was not terminable by the employee on 30 days written notice.

OPINION

The sole question before the court is whether Section 9 of Wisconsin Act 1, Wis. Stat. § 111.06(1)(i), which classifies dues checkoff authorizations as an "unfair labor practice" unless they are terminable by the employee on 30 days' written notice, is preempted by the LMRA. The LMRA prohibits employers from paying money to a labor union, 29 U.S.C. § 186(a), with certain express exceptions. Relevant here, § 186(c)(4) expressly permits employers to deduct union membership dues from the wages of an employee pursuant to an employee's written assignment, so long as the deductions are not "irrevocable [by the employee] for a period of more than one year."

A.   Preemption Arguments

Plaintiffs argue that Wis. Stat. § 111.06(1)(i) is preempted by 29 U.S.C. § 186 under the doctrines of field and conflict preemption. With respect to field preemption, plaintiffs argue that the NLRA (as amended by the LMRA) occupies the field of labor

4

regulation, with state regulation being largely limited to regulating "union security agreements" under § 14(b) of the NLRA. *See Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 272, 286 (1986) ("It is by now a commonplace that in passing the NLRA Congress largely displaced state regulation of industrial relations."); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) (states may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits, which includes subjects of mandatory bargaining such as dues checkoff). Because dues checkoff provisions are not "union security agreements," plaintiffs argue, they fall outside the states' authority to regulate. *See NLRB v. Atlanta Printing Specialties & Paper Prods. Union 527, AFL–CIO*, 523 F.2d 783, 787 (5th Cir. 1985) ("It is clear that the dues checkoff provisions are not union security devices but are intended to be an area of voluntary choice for the employee.") As for conflict preemption, plaintiffs argue that Wis. Stat. § 111.06(1)(i)'s requirement that checkoff authorizations are terminable upon 30-days' notice directly conflicts with 29 U.S.C. § 186(c)(4), because the federal law expressly permits unions to bargain for dues checkoffs that are irrevocable for one year.

For their part, defendants disagree that Wis. Stat. 111.06(1)(i) is preempted under either conflict or field preemption. They argue that federal law does *not* occupy the field of dues checkoff provisions, as such provisions are essentially union security agreements that result in compulsory membership in a union. Defendants further argue that there is no conflict between Wisconsin and federal law, as employers and unions can fully comply with both by only using dues checkoff agreements that are revocable upon 30 days' notice by an employee.

5

B.  The Supreme Court's Controlling *SeaPak* Decision

Although both sides present well-reasoned arguments, the court concludes that this case is relatively straightforward, since its resolution is controlled by the United States Supreme Court's decision in *SeaPak v. Indus., Tech. & Prof'l Emp., Div. of Nat'l Mar. Union, AFL-CIO*, 300 F. Supp. 1197, 1200 (S.D. Ga. 1969), *aff'd sub nom.* 423 F.2d 1229 (5th Cir. 1970)*, aff'd sub nom.* 400 U.S. 985 (1971).  In *SeaPak*, the district court determined that a similar Georgia state statute regulating duration of dues checkoff agreements was preempted by federal labor law.  Specifically, the court held that § 302(c) of the LMRA regulates dues checkoffs and that the Georgia law, which required dues checkoff agreements to be revocable at will, was "completely at odds" with the LMRA's allowing irrevocable authorizations not to exceed one year.  *Id.* at 1200.  The Fifth Circuit affirmed in a *per curiam* decision, stating that it was adopting "the opinion of the district court."  Without discussion, the Supreme Court likewise summarily affirmed.  *Id.*

Because *SeaPak* was affirmed by the Supreme Court and has not been overruled by any subsequent Supreme Court decision, this court is bound by it.  *See Levine v. Heffernan*, 864 F.2d 457, 459 (7th Cir. 1988) ("At the risk of restating the obvious, we note that a lower court must follow a relevant Supreme Court decision," further noting that "only the Supreme Court may overrule one of its own precedents.").  This is true even though *SeaPak* was affirmed without discussion in a summary disposition by the Supreme Court.  *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (explaining that "lower courts are bound by summary decisions" of the Supreme Court and noting that "votes to affirm summarily . . . are votes on the merits of a case").  Indeed, under *Hicks*, this court is bound by *SeaPak* decision with respect to any issues "presented and necessarily decided" by the

6

district court. *See Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (clarifying rule in *Hicks*).[2]

Although defendants concede that *SeaPak* has not been expressly overruled by any subsequent Supreme Court decision, they make several arguments as to why this court is not bound by it. None is persuasive. First, defendants argue that the issues decided in *SeaPak* are distinguishable from those here. Specifically, they argue that the district court's *SeaPak* decision relied solely on the doctrine of "conflict preemption" in deciding that the Georgia statute was preempted by federal law. Thus, defendants argue, this court is not bound by any findings or conclusions the district court made regarding *field* preemption.

Defendants are mistaken. The district court's decision in *SeaPak* expressly discusses and relies on *both* conflict and field preemption. With respect to conflict preemption, the court found that, "[t]he two statutory provisions are completely at odds. One or the other must give way. They cannot co-exist." *Id.* at 1200. But the court also applied the doctrine of field preemption. The plaintiff's position in *SeaPak* was that Congress had "preempted the field" of dues checkoff agreements, while the state took the position that § 14(b) of the LMRA allowed the state to regulate dues checkoffs. *SeaPak*, 300 F. Supp. at 1198. The court ultimately agreed with the plaintiff, concluding that the NLRA occupied the field of dues checkoff agreements. In particular, the court held that "[t]he area of checkoff of union dues has been federally occupied to such an extent under 301 that no room remains for state regulation in the same field." *Id.*

The jurisdiction statement filed with the Supreme Court likewise confirms that

---

[2] At the same time, the court is not bound by any discussion of issues that "merely lurk[ed] in the record" of *SeaPak*, but were not necessarily decided by the court. *See Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 182-83 (1979).

7

both field and conflict preemption were at issue in *SeaPak*. Indeed, that statement actually includes the quotations above from the district court regarding conflict and field preemption, and identifies the "Questions Presented" as including elements of both conflict (Question 1) and field (Question 2) preemption. *See SeaPak*, No. 70-463, 1970 WL 136846 (jurisdictional statement); *see also Lecates v. Justice of Peace Court No. 4 of State of Del.*, 637 F.2d 898, 905 (3d Cir. 1980) (explaining that it is appropriate to examine facts and jurisdictional statement of case decided by summary disposition to determine whether it was dispositive of issues in a subsequent case). In short, the summary affirmance of the district court's decision in *SeaPak* was a decision on the merits of the *same* issues raised in this case: whether a state law restricting the duration of dues checkoff authorizations is preempted by federal law under the doctrines of conflict *and* field preemption. Those issues having been presented and decided by the Supreme Court, the *SeaPak* decision controls this case as well.

Defendants' next argument is that this court is not bound by *SeaPak* because "subsequent doctrinal developments" undermine that decision. (*See Dfts.' Br.*, dkt. #38, at 20, 25). While a summary disposition may have reduced precedential value if subsequent cases "make clear that [the summary disposition] is no longer authoritative," *Baskin v. Bogan*, 766 F.3d 648, 660 (7th Cir. 2014), defendants have pointed to no doctrinal developments that "make clear" *SeaPak* is no longer controlling.

For example, defendants point to no significant doctrinal developments that undermine the *SeaPak*'s conclusion that the NLRA occupies the field of dues checkoff authorizations. Rather, defendants rely on case law and legal principles that existed *prior* to *SeaPak*, citing cases such as *NLRB v. Gen. Motors Corp.*, 373 U.S. 734 (1963) and *Retail*

*Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746 (1963). Not only did those decisions predate *SeaPak,* but both of those cases were cited and distinguished in the *SeaPak* decision as not directly addressing the issue of dues checkoff authorizations. *See SeaPak*, 300 F. Supp. at 1199. The *SeaPak* court instead determined that § 14(b) did not reach the issue of dues checkoffs. Likewise, the more recent cases cited by defendants that analyze § 14(b) do not discuss dues checkoff agreements, much less 29 U.S.C. § 186(c)(4) in particular, and thus, do not "make clear" that *SeaPak*'s discussion of field preemption with regard to dues checkoff agreements is no longer valid.

Defendants also cite no cases that directly undermine *SeaPak*'s analysis of conflict preemption. Defendants argue that subsequent case law has made clear conflict preemption exists only if it would be *impossible* for a party to comply with both state and federal requirements. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011); *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013). Defendants argue that under this newer case law, there can be no conflict preemption in the present case because an employer *can* comply with both federal and state law concerning dues checkoff authorizations by simply limiting the irrevocability of dues checkoffs to 30 days or less.

Contrary to defendants' analysis, however, conflict preemption can exist regardless of whether compliance with state and federal law is impossible, if the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Patriotic Veterans, Inc.*, 736 F.3d at 1049. This type of conflict preemption is also known as "purposes and objectives preemption." *Id.* The district court in *SeaPak* found that the Georgia state law requiring dues checkoffs to be revocable at will was

9

"completely at odds" with § 302(c)(4) of the LMRA *because* that federal provision was enacted to expressly permit unions from bargaining for dues checkoff agreements that were irrevocable for up to one year. *See SeaPak*, 300 F. Supp. at 1200. In other words, a state law *limiting* the irrevocability of dues checkoff agreements to 30 days directly conflicts with the federal law *permitting* unions to bargain for longer periods of irrevocability. Defendants cite to *no* subsequent authority undermining *SeaPak*'s application of this type of conflict preemption.

For all these reasons, *SeaPak* remains controlling authority, absent a change in federal law or reversal by the Supreme Court. No court has overruled *SeaPak* or even concluded that *SeaPak* was wrongly decided, and defendants have pointed to no significant doctrinal developments that undermine the reasoning of *SeaPak*. To the contrary, lower courts have consistently followed *SeaPak* in finding that similar state laws regulating dues checkoff agreements are preempted by § 302 of the LMRA. *See, e.g., United Auto., Aerospace & Agric. Implement Workers of Am. Local 3047 v. Hardin Cty., Kentucky*, 842 F.3d 407, 421 (6th Cir. 2016); *Georgia State AFL-CIO v. Olens*, No. 1:13-CV-03745, 2016 WL 3774071, at *6 (N.D. Ga. July 7, 2016); *Gen. Cable Indus. v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135*, No. 1:15-CV-81, 2016 WL 3365133, at *3 (N.D. Ind. June 17, 2016); *United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1182 (D. Ariz. 2013). Consistent with *SeaPak* and the numerous court decisions that have followed it, Wisconsin's law regulating dues checkoff agreements does not come within the § 14(b) exception to federal preemption, and it is preempted both because it overlaps with, and is in conflict with, federal regulation under the LMRA. Accordingly, this court concludes that Wis. Stat. §

111.06(1)(i) is preempted by § 302 of the LMRA, 29 U.S.C. § 186(c)(4).

### C.     Appropriate Relief

The only remaining question is the form of relief to which plaintiffs are entitled. Plaintiffs have requested declaratory and injunctive relief. The court concludes plaintiffs are entitled to a declaration that Section 9 of 2015 Wisconsin Act 1, Wis. Stat. § 111.06(1)(i), is unconstitutional under the Supremacy Clause of the United States Constitution as preempted by § 302 of the LMRA. Additionally, because that portion of the Act is unconstitutional, the court will enter an order permanently enjoining its enforcement. *See Preston v. Thompson*, 589 F.2d 300, 303 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest.").

Defendants' argue that an injunction against the named defendants may not completely stop enforcement of the Act, but that argument provides no persuasive reason not to enter an injunction against the named defendants in this case. The record in this case shows that the Department of Workforce Development *is* the agency that has already been enforcing, at least indirectly, the preempted law. Additionally, as this court explained previously, the Wisconsin Employment Relations Commission is the agency actually charged with enforcing the law under Wis. Stat. § 111.07(1), and has taken the position that the state law is not preempted by federal law. Finally, although defendants argue that local district attorneys, who are not named defendants, could potentially try to enforce the state law via a criminal complaint, defendants have provided no evidence suggesting that there is even a remote possibility that a local district attorney would file a criminal complaint attempting to enforce a state law that has been declared

11

unconstitutional by a federal court. Accordingly, the court concludes that entry of a permanent injunction is appropriate

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #37) is DENIED.

2. Plaintiffs' motion for summary judgment (dkt. #41) is GRANTED.

3. Section 9 of 2015 Wisconsin Act 1, codified as Wis. Stat. § 111.06(1)(i) is unconstitutional under the Supremacy Clause of the United States Constitution, as preempted by § 302 of the Labor Management Relations Act, codified as 29 U.S.C. § 186(c)(4).

4. Defendants are hereby permanently enjoined from enforcing Wis. Stat. § 111.06(1)(i).

5. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 28th day of December, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge